SECURITY MORTGAGE COMPANY *v.* WESTERN UNION TELEGRAPH COMPANY.

Opinion delivered December 1, 1919.

1. TELEGRAPHS AND TELEPHONES—SENDING MESSAGE ERRONEOUSLY—DAMAGES AS AFFECTED BY PLEADING—LOSS OF PROFITS.—A telegraph message was delivered to the telegraph company, in which the sender offered a client a loan of $8,000; the company erroneously transmitted the message to read $3,000. *Held,* in an action by the sender against the telegraph company, no recovery for the loss of profits could be had where the plaintiff did not allege in his pleadings that the sendee of the message would have accepted his offer, if it had been correctly transmitted.

2. TELEGRAPH AND TELEPHONE COMPANIES—ERRONEOUS TRANSMISSION OF MESSAGE—STEP IN NEGOTIATION—NOMINAL DAMAGES.—A. delivered a message to defendant offering to loan B., the sendee of a message, the sum of $8,000. The company sent and delivered the message to read $3,000. In an action by A. against the telegraph company only nominal damages may be recovered, because the message constituted only a step in negotiations for a loan.

Appeal from Miller Circuit Court; *Geo. R. Haynie,* Judge; affirmed.

*Gustavus G. Pope,* for appellant.

The court erred in sustaining the demurrer and dismissing the complaint. The telegraph company was lia-

ble for the loss occasioned by its mistake in the telegram. 132 Ark. 339; 106 *Id.* 122; 126 S. W. 629; 71 So. 183; 133 Ark. 184. It was liable for the money actually lost but also for the $240 profits to reimburse it for the overhead expenses and time and efforts in closing the loan after the acceptance by J. B. Montgomery, the purchaser. 92 Ark. 133; 110 *Id.* 144.

*Francis R. Stark, Charles S. Todd,* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

The demurrer was properly sustained because:

1. Plaintiff's loss was not the direct, immediate or reasonable result of the change made in the message as delivered, but a remote, indirect, improbable and not to be anticipated result, of a result at all. The expenses were not recoverable. 37 Cyc., p. 1760, par. 2; 133 Ark. 184; Jones on Telegraphs, etc., p. 694, sec. 535; 169 S. W. 1026; 100 N. W. 13; 44 S. E. 309; 47 So. 412; 48 *Id.* 408; 51 S. E. 290-3.

2. The loss is not recoverable because defendant had no notice that plaintiff would suffer it by reason of the error in transmission. 53 Ark. 434-443; 74 *Id.* 358-360; 103 *Id.* 160; 115 *Id.* 142-153; 118 *Id.* 406.

Smith, J. This case is here on an appeal from a judgment sustaining a demurrer to the following complaint:

"That on or about January 13, 1918, the Security Mortgage Company delivered to the office of the Western Union Telegraph Company at Texarkana, Arkansas, for transmission to J. B. Montgomery, at Springfield, Mo., the following telegram, towit:

" 'Do you want a choice $8,000, 7 per cent. loan, three years, secured by Texarkana Broad street property, best located in the city, conservative value $20,000? Well rented and insured for $6,000. Payment guaranteed by us if you desire. Answer.

(Signed)      " 'Security Mortgage Company.'

"That through the negligence of the employees and servants of said Western Union Telegraph Company said

telegram when delivered by said telegraph company to said J. B. Montgomery, at Springfield, Mo., erroneously gave the amount of said loan at $3,000 instead of $8,000 as contained in the original telegram delivered to said telegraph company at Texarkana, Ark., for transmission.

"That said J. B. Montgomery, upon receipt of said telegram giving the amount of the loan as $3,000, wired acceptance, without giving the amount of the loan according to the telegram delivered to him, and the Security Mortgage Company, the plaintiff, relying upon the defendant Western Union Telegraph Company to correctly transmit said message accepted the loan from the customer in the sum of $8,000, and prepared the necessary papers and advanced the money, and that said Security Mortgage Company would not have made said $8,000 loan as set out in the telegram copied herein if same had not been accepted by J. B. Montgomery as herein alleged; that they had no other purchaser agreeing to take such loan; that the loan was closed with the customer in Texarkana before the plaintiff knew that an error had been made in the transmission of said telegram as alleged; that the plaintiff borrowed the money to close the loan with the customer and was not able to dispose of said loan until March 8, 1918; and paid out $69.33 interest on such borrowed money; paid out brokerage fees in handling said loan, attorney's fees, etc., $160; telegrams over wires of defendant company trying to sell said loan to some other purchaser $6;that said loan was sold for $8,000 flat and the purchaser to have accrued interest up to March 8, 1918, and that said J. B. Mongtomery buys all loans from plaintiff herein at a sufficient premium to net him 6 per cent. on the money invested, and said plaintiff thereby lost an additional sum of $240 which plaintiff would have received if the loan had been sold to J. B. Montgomery.

"The said J. B. Montgomery refused to make the $8,000 loan, and plaintiff was compelled to find another purchaser for this mortgage, which they did at a loss of $465, and that this loss is the direct result of the negli-

gence of said telegraph company as hereinbefore set out and alleged. And that said defendant was duly notified of plaintiff's claim for said loss.

"Wherefore plaintiff prays judgment against the Western Union Telegraph Company in the sum of $475, together with interest from January 13, 1918, at the rate of 7 per cent. per annum until paid, and costs of suit and all proper relief."

It will be observed that judgment is asked both on account of actual expenses incurred in the making of the loan and for profit lost on account of not consummating a sale of the loan to the sendee of the message.

All of the judges are of the opinion that no recovery can be had on account of lost profits for the reason that it was not alleged that the sendee would have accepted the loan had the message been correctly transmitted. The contrary is affirmatively alleged. The $8,000 loan referred to in the message as sent was tendered to the sendee and declined by him.

The majority of the court are also of the opinion that only nominal damages can be recovered and that there can be no recovery of the items of expense mentioned in the complaint. We arrive at this conclusion because in our opinion the telegram—had it been correctly transmitted—would have been only a step in the negotiations. The rule in such cases is stated in 37 Cyc. p. 1760, par. 2, as follows: "Where the message relates to a proposed contract between plaintiff and another person, but is neither an acceptance of a previous offer nor itself a definite offer, but only an invitation to submit an offer or to meet or correspond with the sender for the purposes of further negotiation, the failure duly to deliver the message is not, as a matter of law, the proximate cause of the failure of the negotiations to result in a binding contract, and damages for the loss of a contract which might or might not have resulted from further negotiations being too remote and uncertain, only nominal damages can be recovered. This rule applies to messages not containing a definite offer but merely inquiring

whether the addressee will accept a certain price, or will accept a certain position, or desires a position or employment, or requesting a quotation of prices, and particularly to a message which is in effect a discontinuance of pending negotiations.''

Upon a somewhat similar state of facts in the case of *Western Union Telegraph Co.* v. *Caldwell*, 133 Ark. 184, we denied the right of recovery upon the ground that an answer to the message would not have completed the contract as either party might have changed his mind before entering into a binding contract. So here no reply that could have been given to the telegram as sent would have constituted a binding contract. An affirmative reply that the sendee did desire to buy such a loan as that described in the message as sent would have required further negotiations to consummate it and either party might have changed his mind before the event was accomplished. After the transmission of an affirmative reply one party might have demanded a premium and the other a discount, and each would have had the legal right to do so without being liable to the charge of having breached the contract—these essential details not being covered by the telegraphic correspondence.

It follows, therefore, that the demurrer was properly sustained and the judgment is therefore affirmed.

McCULLOCH, C. J., (dissenting). It seems to me that the majority miss the point of the case in basing the decision on the ground that the message, if correctly transmitted, might not have resulted in a contract between the parties. The message constituted an explicit proposal for the sale of certain securities of a stated kind and amount, and if the proposal had been seasonably accepted it would have resulted in a definite contract. The fact that the proposal as originally worded was not accepted and would not have been accepted does not affect the right of the sender to recover damages. The message, as incorrectly worded when delivered to the sendee, was promptly accepted and this purported to establish a contract on which the minds of the parties ap-

peared to meet. The parties construed it to be a contract between each other and the sender, acting on the faith that the message had been correctly transmitted, incurred considerable expense in complying with the terms of the contract. This was caused by the negligence of the telegraph company and, according to the allegations of the complaint, a cause of action arose for damages.

I fail to see that the message lacks any of the elements of a definite proposal. It contained an offer to sell and stated the amount of the security, the rate of interest and other facts in description of the kind and value of the security.

Mr. Justice HUMPHREYS concurs in these views.